IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| TERRY WILSON MCCORMICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:19-cv-600-JTA |
| | ) | |
| KILOLO KIJAKAZI, | ) | (WO) |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Pursuant to 42 U.S.C. § 405(g), the claimant, Terry McCormick ("McCormick"), brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[2] The Commissioner denied McCormick's claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). (R. 93.) The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 21, 22.)

After careful scrutiny of the record and the briefs submitted by the parties, the Court finds that the decision of the Commissioner is due to be AFFIRMED.

---

[1] Under Federal Rule of Civil Procedure 25(d), the Court substitutes Kilolo Kijakazi, the acting Commissioner of the Social Security Administration, for Andrew Saul, the former Commissioner.

[2] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

## I.   PROCEDURAL HISTORY AND FACTS

McCormick was born on June 24, 1971, and was 45 years old at the time of the administrative hearing held on June 2, 2017.  (R. 278, 285.)  He completed the ninth grade and previously worked as a welder.  (R. 105-06.)  He alleged a disability onset date of March 8, 2012, due to back problems, hypertension and chronic obstructive pulmonary disorder (COPD).  (R. 278, 285, 316.)

On August 26, 2015, McCormick applied for a period of disability, DIB and SSI under Title II (42 U.S.C. §§ 401, *et seq*.) and Title XVI of the Social Security Act (42 U.S.C. §§ 1389, *et seq.*).  (R. 278, 285.)  Both applications were denied on November 13, 2015 (R. 169, 178) and McCormick requested an administrative hearing (R. 184-85).

Following an administrative hearing, the Administrative Law Judge ("ALJ") denied McCormick's request for benefits in a decision dated October 4, 2017.  (R. 80-93.)  McCormick requested review by the Appeals Council.  (R. 254.)  The Appeals Council granted review (R. 257) and on September 24, 2018 issued a decision finding that McCormick is not disabled (R. 34-38).

On February 12, 2019, McCormick requested additional time to seek judicial review of the decision by the Appeals Council.  (R. 13.)  On June 19, 2019, the Appeals Council granted the request and allowed McCormick 30 (thirty) days from his receipt of the extension to file a civil action.  (R. 2.)  On July 3, 2019, McCormick filed the instant action appealing the decision of the Commissioner.  (Doc. No. 1.)

## II.    STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)).  Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence.  *Id*. at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner.  *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210.  However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

### III.    STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB and SSI must prove that he is disabled.  *See* 20 C.F.R. § 404.1505; 20 C.F.R. § 416.920.[3]  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520.  The evaluation is made at the hearing conducted by the ALJ.  *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).  First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  "Substantial gainful activity" is a work activity that involves significant physical or mental activities.  20 C.F.R. § 404.1572(a).  If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  Absent such impairment, the claimant may not claim disability.  *Id*.  Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an

---

[3]  Although DIB and SSI are separate programs, the law and regulations governing claims under the respective programs are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining disability.  *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).

impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d). If the claimant has failed to establish that he is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). The ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1). In this final analytical step, the ALJ must decide whether the claimant can perform any other relevant work corresponding with his RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

## IV.    ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process the ALJ found that McCormick has not engaged in substantial gainful activity since August 5, 2015, the

amended onset date of disability,[4] and that he suffers from the following severe impairments that significantly limit his ability to perform basic work activities: degenerative disc disease, hypertension, COPD/asthma, obesity, affective disorder/bipolar disorder, and coronary artery disease.  (R. 83.)  The ALJ found non-severe impairments of arthritis in various joints and sleep apnea.  (*Id*.)  The ALJ concluded that McCormick's severe impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 83-86.)

After consideration of the entire record, the ALJ determined that McCormick retains the RFC to perform light work[5] as defined in 20 C.F.R. § 404.1567(b).  (R. 86.)  The ALJ found the following workplace limitations applicable to McCormick:

> Function by function, the claimant is able to lift and carry 20 pounds occasionally and 10 pounds frequently.  The claimant is able to stand and/or walk no more than 4 hours (total) of the workday.  The claimant will be allowed a sit/stand option.  The claimant will frequently balance and stoop.  The claimant can occasionally crouch.  The claimant will never climb ramps/stairs, kneel, crawl, or climb ladders, ropes, and scaffolds.  The claimant will avoid concentrated exposure to extreme cold/extreme heat, wetness and humidity.  The claimant will avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation.  He will avoid all exposure to hazards including dangerous machinery and unprotected heights.  He will never drive a commercial vehicle.  He will perform simple routine tasks and will be provided short simple instructions.  He will be provided reminders every 2 hours to help keep him on task.  He will have occasional interaction with the general public and co-workers.

---

[4] During his administrative hearing, McCormick made an oral motion to amend his onset date from March 8, 2012 to August 5, 2015.  (R. 103.)  The ALJ granted the motion.  (R. 80.)

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities . . . ."  20 C.F.R. § 404.1567(b).

(*Id.*)

Based upon the testimony of a vocational expert ("VE"), the ALJ determined that McCormick was precluded from performing any past relevant work. (R. 91.) The ALJ also found that based upon McCormick's age, education, work experience and RFC, there are jobs that exist in "significant numbers in the national economy" that he can perform, and therefore he was not disabled as defined by the Act. (R. 91-92.) The ALJ further found that McCormick could work as a paper pattern folder, garment folder or factory inspector.[6] (R. 92.) The ALJ concluded that McCormick had not been under a disability from August 5, 2015, through October 4, 2017, the date of the ALJ's decision. (R. 93.)

McCormick requested review of the ALJ's decision by the Appeals Council. (R. 254.) The Appeals Council granted his request and informed him that, based upon the written record before the ALJ and hearing testimony, the ALJ's decision was not supported by substantial evidence. (R. 257-58.) The Appeals Council agreed with the findings of the ALJ under steps one through four of the sequential evaluation process, but found at the fifth step that the ALJ's decision was "incorrect in its listing of other jobs that [McCormick] can still do in spite of [his] impairments; therefore [the Appeals Council stated it planned] to issue a new decision correcting the other jobs." (R. 258-59.) The Appeals Council adopted the VE's hearing testimony[7] as to the jobs that McCormick could perform and

---

[6] The ALJ found that McCormick can perform work as a factory inspector. This was inconsistent with the VE's hearing testimony. The VE testified that three jobs McCormick could perform in the light work category are information clerk, office helper, and garment sorter. (R. 128.)

[7] The Appeals Council decision changed the list of possible jobs to information clerk, office helper, and garment sorter. (R. 260.)

stated its intent to issue a decision that he was not disabled from August 5, 2015 through October 4, 2017.  (R. 258-60.)   The Appeals Council invited McCormick to submit a "statement about the facts and the law in [his] case or additional evidence within 30 days." (R. 260.)   The Appeals Council advised McCormick it would consider the additional evidence if he

> show[s] [that it] is new, material, and relates to the period on or before the date of the hearing decision.  [McCormick] must also show there is a reasonable probability that the additional evidence would change the outcome of the decision.  [He] must show good cause why [he] missed informing [the Appeals Council] about or submitting it earlier.

(R. 257, 260.)

On September 24, 2018, the Appeals Council issued a decision.  (R. 34-38.)   It acknowledged McCormick's submission of additional medical records were relevant to 2018 and explained that because the ALJ decision was issued on October 4, 2017, the records did not relate to the period at issue.  (R. 34.)   The Appeals Council then adopted the ALJ's decision on the issue of disability and noted its earlier correction of jobs that McCormick can perform.  (R. 34.)   In so doing, the Appeals Council adopted the ALJ's sequential analysis findings, with the additional finding that McCormick's "alleged symptoms are not consistent with and supported by the evidence of record for the reasons identified in the body of this decision."  (R. at 36-37.)   The Appeals Council's decision became the final decision of the Commissioner.

## V.   DISCUSSION

McCormick presents four discernible arguments on appeal.[8]  First, McCormick argues the Appeals Council did not adequately evaluate the new evidence he submitted so remand is warranted.  (Doc. No. 14 at 24.)  Second, he argues the ALJ did not give proper weight to his work history.  (*Id*. at 29.)  Third, he argues the ALJ did not properly consider his obesity.  (*Id*. at 31.)   Fourth, he argues the ALJ improperly applied the Eleventh Circuit's three-part pain standard.  (*Id*. at 32.)

The Court evaluates each of McCormick's arguments below.

A.  The Appeals Council was not required to consider the new evidence.

A claimant is allowed to present new evidence at each stage of the administrative process, including before the Appeals Council.  20 C.F.R. § 404.900(b).  If the claimant submits new evidence after the ALJ's decision, the Appeals Council must consider the evidence if it is new, material, and chronologically relevant.  *See Washington v. Soc. Sec. Admin., Comm'r.*, 806 F.3d 1317, 1320 (11th Cir. 2015); 20 C.F.R. § 404.970(b).  The evidence is material if "there is a reasonable possibility that [the new evidence] would change the administrative result."  *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987); *see*

---

[8] McCormick raises five arguments in his brief.  (Doc. No. 14.)  In his fifth argument, McCormick references records he submitted, but he discusses disability for a female claimant identified as "Howard."  (*See* Doc. No. 14 at 40-41) ("Prior counsel filed an appeal and submitted the records of Dave Harvey . . . and Quality of Life . . . .  Importantly, all submissions describe physical and psychological symptoms manifested by Howard that . . . could bear on her condition during the relevant period between 7/1/05 the alleged onset date 3/11/11 and 1/25/13, the date of the decision.").  Because the argument in this section is substantially similar to McCormick's first issue, *i.e*., whether new evidence submitted to the Appeals Council was improperly excluded from review under 20 C.F.R. § 404.970(b), the Court addresses this argument to the extent that it is applicable to McCormick as part of his first argument.

20 C.F.R. § 404.970(a)(5).  "New evidence is chronologically relevant if it 'relates to the period on or before the date of the [ALJ's] hearing decision.' "  *Hargress v. Soc. Sec. Admin.*, 883 F.3d 1302, 1309 (11th Cir. 2018) (quoting 20 C.F.R. § 404.970(b)); *see also McClain v. Soc. Sec. Admin.*, 760 F. App'x 728, 731 (11th Cir. 2019).

Here, McCormick's argument that his new records were inadequately considered is unavailing.  The record before the Court establishes that the Appeals Council did not consider McCormick's new evidence because it was not chronologically relevant.  The Notice of Appeals Council Action issued on June 24, 2018, informed McCormick that it would consider additional evidence that is "new, material, and relates to the period on or before the date of the hearing decision."  (R. 257, 260.)  The Appeals Council decision noted that the additional medical records submitted by McCormick covered the time between January 2, 2018 and August 21, 2018, while the provider statements from Dave A. Harvey ("Harvey"), social worker, covered the time between February 1, 2018 and August 23, 2018.  (R. 34.)  The Appeals Council explained that the timeframe of the records did not relate to McCormick's disability claim because the date of the ALJ hearing decision was October 4, 2017.  (*Id*.)  The Appeals Council found that the additional evidence did "not relate to the period at issue" and therefore did not "affect the decision about whether [McCormick] was disabled beginning on or before October 4, 2017."  (*Id*.)  The Appeals Council was not required to give a more detailed explanation.  *See Hargress*, 883 F.3d at 1309 (citation omitted).

Moreover, the Court agrees with the Appeals Council's finding that the new evidence was not chronologically relevant.  The medical records consisted of progress

notes from McCormick's individual psychotherapy counseling with Harvey and a letter from Harvey wherein he stated his disagreement with the disability determination. (R. 42-76.) These records discussed only 2018. Nothing in these medical records show Harvey treated McCormick during the relevant period, Harvey had considered past medical records of McCormick in forming his disability opinion or that the information in these records relate to the period of disability before the ALJ. *See Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1322-23 (11th Cir. 2015) (recognizing that medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant when, in part, a doctor reviewed the claimant's treatment records from that period when forming his opinion). Because the new evidence was not chronologically relevant, the Appeals Council was not required to consider it. Accordingly, the Appeals Council did not err in its decision not to consider the new evidence submitted by McCormick and remand is not warranted on that basis.

B. The ALJ did not err in her consideration of McCormick's work history.

McCormick argues the ALJ and Appeals Council failed to give proper weight to his excellent work history in determining whether he was credible. (Doc. No. 14 at 1, 29.) Although McCormick does not directly attack the credibility determinations of the Appeals Council and ALJ, he appears to argue that the failure to give proper weight to his work history warrants remand.[9] (*Id*. at 29.) McCormick acknowledges that the Eleventh Circuit

---

[9] Notably, McCormick does not cite to any provision in the Social Security Act, the Regulations, or agency's sub-regulatory policies supporting his position that the ALJ must discuss or even consider work history as a favorable factor. (*See* Docs. No. 14, 17.)

Court of Appeals has not adopted a rule on whether the claimant's work history must be considered when determining a claimant's credibility (*id.* at 30), thus he cites a case from the Seventh Circuit Court of Appeals to argue that a "claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability" (*id.* at 29) (quoting *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015)).

McCormick's argument is without merit.  "While a claimant's 'prior work record' is a consideration in evaluating a claimant's credibility, 20 C.F.R. § 404.1529(c)(3), 'the Eleventh Circuit has not [ruled that] an ALJ's failure to consider a claimant's 'lengthy and consistent work record' in evaluating a claimant's credibility is erroneous."  *Mahon v. Comm'r of Soc. Sec.*, No. 8:16-cv-1462-T-JSS, 2017 WL 3381714, at *10 (M.D. Fla. Aug. 7, 2017) (citing *Lafond v. Comm'r of Soc. Sec.*, No. 6:14-CV-1001-ORL-DAB, 2015 WL 4076943, at *9 (M.D. Fla. July 2, 2015)).  This court is not inclined to follow the law of a non-binding circuit on this issue.[10]  Rather, this court is persuaded by other district courts

---

[10] Notably, in *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991), the Eleventh Circit rejected the argument that "the ALJ should have accepted [a claimant's] testimony about her pain because she had a good work history."  The Circuit stated,

> . . . Congress has set forth the conditions under which a claimant's complaints of pain may establish the existence of a disability.  42 U.S.C. § 423(d)(5)(A). This court has previously examined this section and ruled that a claimant must produce "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

*Id.*  The Circuit held that substantial evidence supported the ALJ's conclusion because the claimant "failed to meet either of the two conditions that would satisfy the second part of this test, and the ALJ was thus not required to grant [the claimant] benefits based on her complaints of pain.  *Id.*

from within the Eleventh Circuit which have found no reversible error where the ALJ did not specifically discuss the claimant's work history in the credibility analysis. *See, e.g., Brothers v. Berryhill*, No. 4:18-cv-01557-JEO, 2019 WL 3555064, at *4 (N.D. Ala. Aug. 5, 2019) (holding ALJ did not err "in determining Plaintiff's credibility without reference to his prior work ethic"); *Wilson v. Soc. Sec. Admin., Comm'r*, No. 4:18-cv-00407-JHE, 2020 WL 1285927, at *6 (N.D. Ala. Mar. 16, 2020) (finding claimant's "argument that the ALJ erred by failing to consider [his] work history is unpersuasive"); *Neff v. Saul*, No. 8:18-cv-3040-T-SPF, 2020 WL 1181952, at *5-6 (M.D. Fla. Mar. 12, 2020) (finding no reversible error where ALJ did not specifically discuss plaintiff's work history in his credibility analysis); *Henley v. Comm'r of Soc. Sec.*, No. 8:19-cv-3011-T-MAP, 2021 WL 321503, at *6 (M.D. Fla. Feb. 1, 2021) (finding no error in ALJ's credibility analysis despite not explicitly discussing plaintiff's work history); *Sickmiller v. Saul*, No. 8:19-cv-3087-SPF, 2021 WL 1186846, at *7 (M.D. Fla. Mar. 30, 2021) ("in reaching his credibility determination, the ALJ applied the correct legal standards and his findings are supported by substantial evidence. . . . although the ALJ did not specifically discuss Plaintiff's work history in his credibility analysis"); *Coleman v. Astrue*, No. 8:11-CV-1783-T-TGW, 2012 WL 3231074, at *5 (M.D. Fla. Aug. 6, 2012) (finding the "the law judge's credibility determination is not deficient because she did not discuss the plaintiff's work record in the course of that determination").

---

Hence, the Circuit did not hold that a claimant's good work history must be considered in relation to a claimant's complaints of pain.

Further, the record shows the Appeals Council and the ALJ considered McCormick's work history as a production welder. (R. 25, 37, 91.) The ALJ elicited testimony from McCormick during the administrative hearing as to why he stopped working (R. 107) and as to his work as a welder (R. 107-108). In addition, McCormick's earnings record was a part of the administrative record (R. 298-309) and the ALJ considered it (R. 81). Further, both the Appeals Council and ALJ considered testimony from the VE regarding McCormick's work experience. (R. 36, 118.) In short, the record establishes that the Appeals Council and ALJ were aware of McCormick's strong work history throughout the evaluation process. Accordingly, the Court finds no reversible error exists on this issue to warrant remand.

C. McCormick's obesity was properly considered by the ALJ.

McCormick asserts the ALJ failed to give his obesity proper consideration under SSR 02-01p. (Doc. No. 14 at 31.) McCormick recognizes the ALJ found his obesity was a severe impairment and contends the ALJ "does not explain how his gross weight would affect his ability to function in a work setting." (*Id*.) McCormick then includes a block quote from *Early v. Astrue*, 481 F. Supp. 2d 1233, 1239 (N.D. Ala. 2007), but makes no argument pertaining to its relevance in or application to this case.[11] (*Id*.)

---

[11] *Early* is clearly distinguishable from the case at hand as the ALJ in *Early* did not find the claimant's obesity to be a severe impairment. 481 F. Supp. 2d at 1239.

The record belies McCormick's claim that SSR 02-01p[12] was not properly considered by the ALJ.  Social Security Ruling 02-01p " 'does not  mandate a particular mode of analysis' but merely directs an ALJ to consider the claimant's obesity in combination with other impairments."  *Williams v. Astrue*, No. 2:11-cv-888-TFM, 2011 WL 6412224, at * 8 (M.D. Ala. Dec. 21, 2011).  Albeit the ALJ did not specifically reference Ruling 02-01p in the hearing decision, nonetheless the ALJ properly considered McCormick's obesity in assessing his RFC.  The record reflects the ALJ found that McCormick's obesity was one of his severe impairments (R. 83) and that he had a body mass index (BMI) greater than 30 (R. 88).  The ALJ noted "although [McCormick] has alleged some general complaints generally [sic] associated with obesity, there is no documented evidence [he] suffers from any severe physical limitation to his weight or that his weight restricts his ability to ambulate or perform other postural activities."  (R. 88.)

---

[12] As stated in *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009), the relevant portions of Ruling 02-01p provide:

> "An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment ... As explained in SSR 96–8p ... our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis....
> ....
> The combined effects of obesity with other impairments may be greater than might be expected without obesity....
> ....
> ... When we identify obesity as a medically determinable impairment ..., we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments we identify."

(citing 67 Fed. Reg. 57859, 57862–63 (Sept. 12, 2002)).  However, Ruling 02-01p was rescinded, effective May 20, 2019, and replaced with Ruling 19-2p.

Absent such evidence, the ALJ acknowledged that while McCormick's "obesity may exacerbate his pain or other symptoms, there is no indication it would preclude him from performing the modified light exertional residual functional capacity assessed herein." (*Id.*)  Thus, contrary to McCormick's assertion, the ALJ properly considered his obesity as required under Ruling 02-01p in assessing his RFC and remand is not warranted on this issue.

D.  The ALJ properly applied the pain standard.

McCormick argues the ALJ erred in finding his severe conditions do not cause the disabling symptoms he alleges and that the ALJ's deficient analysis resulted in the misapplication of the Eleventh Circuit pain standard.  (Doc. No. 14 at 32, 39.)   The Commissioner responds that substantial evidence supports the ALJ's determination.  (Doc. No. 15 at 14.)

"In order to establish a disability based on testimony of pain and other symptoms, [McCormick] must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citation omitted).   A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability.  *Foote v. Charter*, 67 F.3d 1553, 1561 (11th Cir. 1995).

"If an ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so."  *Wilson*, 284 F.3d at 1225.  Failure to articulate adequate reasons for

discrediting the claimant's subjective complaints of pain requires that the testimony be accepted as true. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Yet, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562 (internal citations omitted). "The credibility determination does not need to cite 'particular phrases or formulations' but it cannot merely be a broad rejection which is 'not enough to enable [the district court] to conclude that [the ALJ] considered [a claimant's] medical condition as a whole.' " *Dyer*, 395 F.3d at 1210 (citing *Foote*, 67 F.3d at 1562).

McCormick did not provide extensive testimony regarding his pain. When the ALJ asked McCormick why he thought he was unable to work, McCormick stated "because I can't breathe to hold out long for any kind of meaningful work. I can't concentrate on the work. I can't, you know, stand in one place for very long, or sit down for very long." (R. 108.) When the ALJ asked the cause of his breathing problems, McCormick responded "I have COPD. It's a combination between the breathing and the joints and the back and everything like that." (R. 108.) The ALJ next asked McCormick if he had pain and he answered affirmatively, stating that the pain "[r]ang[es] anywhere from my ankles all the way up to my knees, to my hips, to the small of my back, to up my back, elbows, shoulders." (R. 108-09.) McCormick rated his pain as 5½ to 6 on any given day, and from 7 to 7½ during the hearing. (R. 109.) McCormick further testified that if he is active, his pain level ranges between 9 and 10, his whole body twitches, and he "just starts feeling like it's literally a knife stuck in [him]." (R. 116-17.) McCormick also testified that he starts to hurt if he stands in one place too long while washing dishes or cooking. (R 113.)

He stated that he cannot bend far because his knees begin to tingle and pain goes to his hips. (R. 114.) He reported that nitroglycerine successfully relieves his chest pain two to three times a week within minutes. (R. 115-16.) He estimated that he could sit or stand in one place for four or five minutes and lies down for four hours a day. (R. 116, 117.)

The ALJ found that McCormick's complaints regarding the intensity, persistence and limiting effects of his symptoms were not consistent with the medical evidence and other evidence in the record. (R. 87, 89.) While the ALJ did not explicitly state that she discredited McCormick's subjective complaints of pain, she cited 20 C.F.R. § 404.1529 – the pain standard – in her discussion (R. 86), she set forth the analysis for subjective pain testimony (R. 86),[13] and she found that McCormick's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, [his]

---

[13] Specifically, the ALJ noted in her decision the following:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

(R. 86.)

statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 87). The ALJ noted "the medical evidence of record supports the presence of conditions that could reasonably be expected to cause the types of symptoms [McCormick] alleges, but not the full extent to which he alleges them." (R. 89.) The ALJ also noted that "[d]espite [McCormick's] allegations his impairments cause debilitating functional limitaitons, to the contrary, he has reported being able to engage in numerous daily tasks . . . such as being able to perform household chores, care for his personal needs, prepare simple meals, mow the lawn, and engage in tasks/activities that require bending and walking." (R. 87, 90.)

The ALJ specifically addressed McCormick's back pain, stating

The claimant has a longitudinal  history of back pain that began after a motor vehicle accident in 2004, but in 2012, he realized his pain was progressively getting worse . . . .  In an effort to manage his lower back pain, the claimant underwent right and left-sided medial branch blocks which provided between 50% to 90% pain relief (more pain relief was achieved on the left side) . . . . .  However, because he was still in pain, he subsequently  underwent a radiofrequency ablation of the lumbar medial branch nerves to the left L3-4 L4-5 and LS-SI facet joints . . . . .  With such treatment modalities, the results of numerous examinations have indicated he has normal range of motion, muscle strength, and stability in all extremities with no pain on inspection . . . . .  However, there have been instances during which some tenderness in the spine and moderate pain with motion have been detected, as well as limited range of motion and right thigh parathesias . . . .  Nevertheless, the claimant has retained the ability to move about freely and his motor strength in the lower extremities is noted as a 5/5 . . . .  In conjunction with the block and ablation procedures, the claimant has also been prescribed pain medication to manage his pain symptoms . . . .  With proper management of his pain symptoms, in July 2014, the claimant endorsed being able to bend, walk and mow the lawn . . . .  But at the same time, tenderness has also been noted and moderate pain with motion, and . . . he was full weightbearing with

use of a cane . . . .  In January 2017, and during subsequent exams he had normal gait and normal muscle strength, muscle tone, and station . . . .

(R. 87.)

As to McCormick's COPD, the ALJ noted that McCormick's "symptoms have been managed with medication in the form of inhalers, oral steroids and nebulizer treatments." (R. 88).  The ALJ noted McCormick reported "his asthma symptoms were under good control with duo nebs and his dyspenea was improved" in July 2015.  (R. 88.)  The ALJ also noted that "[m]ore recent treatment records[] illustrate the examinations of the lungs have been clear to auscultation and no serious abnormalities have been noted[,]" and in "March 2016, imaging of the chest was taken and no acute cardiopulmonary process [was] suspected within the examination parameters."  (*Id*.)

The AL correspondingly addressed McCormick's "cardiac impairments, such as hypertension and coronary artery disease," stating

> While the claimant has been diagnosed with hypertension, he has denied percordial pain and substernal pain during routine exams, and this condition is generally stable with treatment. . . .[T]reatment records from 2016 and 2017 continue to document his hypertension is stable. . . .  The claimant also suffers from coronary artery disease, but this impairment is stable with treatment.  . . . in March 2015, he denied chest discomfort with daily activities, and at that time did not need Nitroglycerin. . . . in April 2016, a basic or routine cardiac examination yielded unremarkable findings, but a cardiovascular stress test was abnormal. . . . The following year in April 2017, he reported chest discomfort while performing household chores and yard work, and it was becoming clear that his symptoms were getting progressively worse. . . . [B]ased on the claimant's chest discomfort complaints, an echocardiogram was performed and confirmed his ejection fraction was normal at 55 to 60% . . . [S]everal months later the claimant still reported some chest discomfort with daily activities, but these symptoms were also noted as "improving."

(R. 88-89.)

After considering McCormick's subjective complaints of pain and the entire record, the ALJ found his "subjective complaints to be partially consistent with the evidence of record," and concluded "his allegations concerning his symptoms are accorded little weight in determining his residual functional capacity assessment."  (R. 89.)   Although McCormick "indicated his musculoskeletal pain affects him on a daily basis, and has compromised his functioning," the ALJ found his "treatment records illustrate . . . the results of numerous routine examinations fail to identify any serious abnormalities that would lead to debilitating functional limitaitons."  (R. 89-90.)   The ALJ considered McCormick's ability to ambulate and noted "the results of several routine examinations are significant and consistent with being able to engage in various activities . . [which are] indicative of being able to engage in exertional activities such as lifting and carrying, as well, as standing and sitting and other postural activities."  (R. 90.)  The ALJ also noted McCormick's "conditions have been generally well-controlled with treatment during the relevant period."  (*Id*.)  The ALJ emphasized that the RFC assessment of light work would accommodate McCormick's "postural and environmental limitations to address discomfort and ensure his safety" in conjunction with his ability to  manage his symptoms "relatively well," as evidenced in the record.  (R. 90.)

The objective medical evidence supports the ALJ's conclusion.[14]   The ALJ reviewed procedure reports related to McCormick's back pain from 2014 and 2015.  Dr. Hans Miller ("Dr. Miller") noted that the right and left-sided medial branch blocks he

---

[14] The Court notes McCormick does not identify a specific failure on the ALJ's part beyond his general claim that the pain standard was improperly applied.

performed were helpful after McCormick reported over fifty percent relief from pain on the right side and up to ninety percent on the left. (R. 372, 376.) McCormick also reported being able to bend, walk and mow grass after Dr. Miller performed the procedures in July 2014. (R. 471.) The records also show that McCormick's motor strength in the lower extremities was 5/5 in October 2015, two months after the alleged onset date of disability. (R. 448.) Dr. Miller explained to McCormick that his MRI did not show "any serious unusual findings." (R. 392.) Additionally, McCormick's primary caregivers at Quality of Life Health Services noted that McCormick had a normal gait in April 2017. (R. 635.) He also had normal muscle strength, muscle tone and station (R. 597, 627-28, 635), notwitstanding tenderness in the thoracic and lumbar spine and moderate pain with motion (R. 627-28, 635).

Records from McCormick's cardiologist show that he reported chest pain in April 2017, but did not have chest pressure, lightheadedness, fatigue, palpitations, or cough/sneezing. (R. 548.) On separate occasions in 2015 and 2016, McCormick reported improved symptoms, no chest discomfort with daily activities, and no need to use Nitroglycerin. (R. 550, 564.) This is consistent with his earlier reports in 2016 that his chest pain was triggered by exertion. (R. 552, 555.) An ultrasound performed on January 15, 2015 revealed no significant cerebrovascular disease. (R. 574.) A stress echocardiogram performed on the same date showed typical angina and severe dyspnea with exercise and no malignant arrhythmias. (R. 575.) Further, McCormick's lungs were consistently clear during visits to his cardiologist. (R. 548, 550, 553, 555, 558, 560.) A

pulmonary function test from April 2015 showed moderate restrictive lung disease with a moderate reduction in total lung capacity.  (R. 572.)

Upon reviewing the objective medical evidence in the record, the Court concludes that substantial evidence exists to support the ALJ's conclusion regarding McCormick's subjective complaints of pain.  This conclusion is based upon the absence of objective medical evidence supporting the extent of McCormick's complaints of pain and the conservative treatment for his pain employed by his treating physicians.  There is no evidence in the medical records of aggressive treatments for McCormick's pain.  In the Eleventh Circuit, "ALJs are permitted to consider the type of treatment a claimant received in assessing the credibility of his subjective complaints."  *Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 873 (11th Cir. 2016) (claimant's statement that pain was reduced by medication indicates conservative treatment); *see also Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 869 (11th Cir. 2019) (citing *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996)) to support holding that treatment is a relevant consideration in the Commissioner's assessment of pain under 20 C.F.R. § 404.1529(c)(3)(v)).  Further, the ALJ sufficiently contrasted McCormick's testimony with treating records which indicated that his pain was not debilitating (R. 87-89, 89-90), and it is obvious to this Court that the ALJ considered McCormick's medical condition as a whole in discounting his testimony of disabling pain.  *Dyer*, 395 F.3d at 1210.  Therefore, the Court finds that the ALJ's determination that McCormick's testimony of disabling pain was not credible is supported by substantial evidence and is in accordance with the Eleventh Circuit's pain standard.

## VI.    CONCLUSION

After review of the administrative record, and considering all of McCormick's arguments, the Court finds the Commissioner's decision to deny him disability is supported by substantial evidence and is in accordance with applicable law.  Accordingly, it is hereby

ORDERED that the decision of the Commissioner is AFFIRMED.

A separate judgment will be issued.

DONE this 22nd day of September, 2021.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE